# Mount Union Borough *v.* Kunz et al., Appellants.

*Corporations—Distribution of assets—Dissolution—Payments in good faith—Mistake.*

1. The assets of a corporation cannot ordinarily be divided among its shareholders until the corporate existence ends, since such assets constitute a trust fund for the protection of creditors.

2. Payments by the corporation clearly not intended to defraud, but made in good faith, when the company is believed to be solvent, and when no rights of creditors are impaired, are proper.

3. Distributions mistakenly made may be retained as against subsequent creditors.

4. Objection that such payments were not authorized at a duly convened meeting of the company, though with the assent of all interested, is without force, where the objection is asserted by one

who later became a creditor, and especially if such person has voluntarily assumed that position.

*Corporations—Dissolution—Water companies—Acts of April 14, 1828, P. L. 439, and April 17, 1876, P. L. 30—Distribution of assets — Construction of statutes — Concealing property — Words and phrases.*

5. The Act of April 14, 1828, P. L. 439, which provides for proceedings against officers and shareholders of a private corporation having assets of the company in their hands before dissolution, does not apply to a water company which has sold its assets to a borough, and has thereby, under the Act of April 17, 1876, P. L. 30, ceased to exist.

6. The Act of April 14, 1828, P. L. 439, must be strictly construed and not extended beyond its evident purpose.

7. The provisions of the Act of April 14, 1828, cannot be taken advantage of, unless it appears (1) that the corporation in question is a private one, and (2) that the property of the company was "concealed," with intent to hinder creditors.

8. The act does not apply unless it appears not only that there was a concealment of the property of the company, but also that it was knowingly received, with intent to hinder creditors, concealment in such case implying design and purpose, and not mere silence or failure to disclose.

9. Where a water company sells its assets to a borough, in consideration of the borough paying debts to an amount stated, and the borough pays an amount in excess of that stated, after the assets of the company are distributed among its stockholders, the borough cannot recover from the stockholders the excess paid by it, where there is no evidence whatever of fraud or concealment of assets on the part of the stockholders.

Submitted May 23, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 16 and 17, Jan. T., 1928, by defendants, from judgments of C. P. Huntingdon Co., Feb. T., 1927, No. 61, on verdict for plaintiff, in case of Mount Union Borough *v.* John B. Kunz et al. Reversed.

Issue on answers to interrogatories under the Act of April 14, 1828, P. L. 439. Before BAILEY, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $2,875.92. Defendants appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*H. H. Waite,* with him *Samuel I. Spyker,* for appellant.—The Act of April 14, 1828, must be strictly construed. It only affords a remedy against stockholders of a private corporation: McMullin v. McCreary, 54 Pa. 230.

Plaintiff failed to prove fraudulent concealment, and by so doing lost its right to recover under the statute: Campbell's Admr. v. Boggs, 48 Pa. 524.

The statute of limitations was a bar to plaintiff's right to recover: White v. Coal Co., 266 Pa. 145; Harrigan v. Bergdoll, 281 Pa. 186.

*James S. Woods,* with him *Charles E. Hower,* for appellee.—The water company was a private corporation: McLeod v. School Assn., 152 Pa. 575.

The action of defendants, and other directors, however innocently done, amounted to a concealment of corporate assets and deprived plaintiff of the fruits of its judgment.

The action was not barred: Marsden's App., 102 Pa. 199; Lewey v. Coke Co., 166 Pa. 536; Bank v. Forster, 8 Watts 12; Com. v. Folz, 23 Pa. Superior Ct. 558; Smith v. Blachley, 198 Pa. 173; Ferris v. Henderson, 12 Pa. 49.

The action of the stockholders and directors was clearly illegal: Riddell v. Fire Co., 8 Phila. 310; Harrisburg Bank v. Forster, 8 Watts 12, 17; Phila. v. Brown, 3 Pa. C. C. R. 327; Bricker v. Lightner, 40 Pa. 199; Binney v. Brown, 116 Pa. 169.

OPINION BY MR. JUSTICE SADLER, June 25, 1927:

The Mount Union Water Company was duly chartered for the purpose of supplying water to the inhabit-

ants of the borough named. With the consent of the Public Service Commission, the latter contracted to purchase, on April 1, 1918, all the property and franchises of the corporation, agreeing to assume its bonded indebtedness, pay claims outstanding to an amount not in excess of $9,000, and turn over $60,000 in cash. The sale was consummated at the time fixed, possession of the plant was taken in May, and it has since been continuously operated by the municipality. In September, the cash consideration paid,—after liquidating certain notes,—was, by agreement of all the stockholders, divided pro rata among them. The appellants, Kunz and Langdon, were two of those interested. Each owned shares of the par value of $5,000, and each received in liquidation $3,750. It was, at the time, believed that all claims due by the corporation had been satisfied either by direct payment, or provided for by the agreement of the borough to satisfy. On or before December 18, 1918, the latter settled with outstanding creditors, but found, when its accounts were balanced in the May following, that it had paid out approximately $2,000 more than the $9,000 agreed on. No claim was made for the excess payment, as far as the record discloses, until suit was brought, on March 24, 1924, against the company, which had long since ceased to function. Judgment was obtained by the borough for the amount claimed, on the ground that the additional sum had been voluntarily advanced under mistake of fact, and the judgment is binding as to the amount thereof: Pocono Ice Co. v. American Ice Co., 214 Pa. 640.

An execution issued against the water company, and a return of nulla bona was made by the sheriff in September of 1925. Two months later, and nearly seven years after the last bill was paid, the present proceeding was instituted to charge the defendants with the amount of the judgment, on the theory that they had improperly in their possession assets of the corporation. The provisions of the Act of April 14, 1828 (P. L. 439,

10 Sm. L. 213), were invoked, which legislation permits, under designated circumstances, the calling in of officers and members of a private corporation in default, to discover if they have concealed its effects for the purpose of avoiding the payment of debts. It further permits proceedings in the nature of a foreign attachment to be pursued against such parties if property is found in their hands belonging to the corporation. In this case, the plaintiff charged a concealment of funds, representing the balance of the purchase price, distributed in entire good faith among the shareholders, when it was believed all debts had been provided for. It was insisted that the division of the remaining assets was irregular, in view of the fact that there had been no formal dissolution of the corporation, and that the money paid still remained its property, the return of which could be demanded.

It is true that the assets of a company cannot ordinarily be divided among those entitled until the corporate existence ceases, since they constitute a trust fund for the protection of creditors, and an attempt to improperly divert the funds of the continuing organization may be restrained: Cornell's App., 114 Pa. 153; Shamokin R. R. Co. v. Malone, 85 Pa. 25; Stang's App., 10 W. N. C. 409. But payments clearly not intended to defraud, but delivered in good faith, when the company is believed to be solvent, no rights of the creditors being impaired, are proper: Powers-Buchanan Co. v. Powers, 269 Pa. 388; Stony Brook Lumber Co. v. Blackman, 286 Pa. 305; Balliet v. Brown, 103 Pa. 546. Distributions mistakenly made may be retained as against subsequent creditors: Clark v. Davidson, 83 Pa. Superior Ct. 79. The contention now raised, that the payments were not authorized at a duly convened meeting of the company, though with the assent of all interested, is without force, where the objection is asserted, as here, by one who later became a creditor (Moller v. Keystone Fibre Co., 187 Pa. 553; Finch Mfg. Co. v. Stirling Co., 187 Pa. 596; Mechanics B. & L. Assn.'s Est. (No. 2), 202 Pa. 589),

and who voluntarily assumed that position, as the borough's liability was limited to the satisfaction of claims to the amount of $9,000 only. It is true that money paid by mistake may be recovered back, even though the one making it may have been negligent (Greenwich Bank v. Banking Corporation, 85 Pa. Superior Ct. 159), but this is not so when the position of the parties has in the meantime been changed: Arsenal Garage Co. v. Fraley, 84 Pa. Superior Ct. 7.

The court below was of opinion that a distribution of assets without dissolution, as provided by the Act of 1856 (April 9th, P. L. 293), was illegal, and that the money paid over remained a part of the company's assets, which could be reached by the process provided in the Act of 1828. Though the common pleas was not asked to formally wind up the company's affairs, yet sight has been lost of the fact that the Act of 1876 (April 17th, P. L. 30, amending section 23 of the Act of 1874), permitting the sale of the property and franchises of a water company (Greensburg v. Westmoreland Water Co., 240 Pa. 481; Hey v. Springfield Water Co., 207 Pa. 38), provides, under these circumstances, that "such corporation shall cease to exist, and the said property and franchises, not inconsistent with this act, shall thereafter be vested in the corporation so purchasing." Under this legislation, the Mount Union Water Company could sell, and other statutes gave to the Borough of Mount Union the right to buy, the plant and thereafter operate it: Borough Code 1915, P. L. 315, article XVIII, chapter 6; Reigle v. Smith, 287 Pa. 30. This was not the case of a mere purchase of the stock of the corporation by a municipality, in which case there is no dissolution (Point Bridge Co. v. Ry. Co., 230 Pa. 289; Point Bridge Co. v. Ry. Co., 240 Pa. 105), but a turning over of all property and rights to the borough, with the effect set forth in the act referred to. The legislature could thus provide for a termination of the company's

existence: Lauman v. Lebanon Valley R. R. Co., 30 Pa. 42.

If the company was dissolved, then an action against it would not lie: Zimmerman v. Puro Coal Co., 286 Pa. 108. However, we have here a judgment against the corporation unappealed from. The effort is to charge the defendants with sums alleged to have been improperly obtained. There was no attempt to discover assets and impose liability by bill in equity, the course usually pursued (B. & O. R. R. Co. v. Kensington Land Co., 175 Pa. 95; Lane's App., 14 W. N. C. 193), nor an effort to enforce whatever rights might exist through the medium of a receiver (Scott v. American Container Co., 283 Pa. 515), but the information desired was sought by interrogatories under the Act of 1828, and the defendants subsequently charged as are garnishees in foreign attachment, on the ground that they were constructively concealing the amounts of the purchase price paid to them, which funds remained in reality assets of the corporation. An act, such as the one under consideration, must be strictly construed and not extended beyond its evident purpose: Cochran v. Shetler, 286 Pa. 226.

Chief Justice MITCHELL, while sitting in the common pleas (Bickley v. Paul, 11 Phila. 256, 257), said of the legislation in question: "It is extremely doubtful whether the Act of 1828 is an existing remedy. It would seem to have been supplied fully by the various sections of the Act of 16th June, 1836, and, though the process of sequestration given by the latter act is taken away by the Act of 1870, and a writ of fi. fa. is substituted for it, the act so amended appears to afford all the remedy that is intended by the Act of 1828." No appellate decision construing the statute has been called to our attention, nor have we discovered one. Assuming its applicability, two facts, amongst others, must appear before its provisions can be taken advantage of.

The corporation in question must be a private one, and the appellants insist the water company was not of

that character. Undoubtedly it was quasi public in nature, as is indicated by the grant of the power of eminent domain: Reeves v. Water Co., 287 Pa. 376; Jacobs v. Clearview Water Supply Co., 220 Pa. 388. It furnished service to the inhabitants generally (Tyrone Gas & Water Co. v. Tyrone, 195 Pa. 566; Reynoldsville v. Reynoldsville Water Co., 247 Pa. 26), and their interests were protected and regulated as to rates and charges by the court of common pleas under the Act of 1874, and, since 1913, by the Public Service Commission. It is also true that property of public corporations cannot be taken in execution, so as to interfere with the carrying out of duties imposed (Foster v. Fowler, 60 Pa. 27; Guest v. Merion Water Co., 142 Pa. 610; Vulcanite Paving Co. v. P. R. T. Co., 220 Pa. 603; McNulty Bros. Co. v. P. R. R. Co., 272 Pa. 442; Bachrach v. R. R. Co., 286 Pa. 325), differing in this respect from the strictly private corporation: McLeod v. Central Normal School, 152 Pa. 575. But the attempt in this case is not to seize the instruments necessarily required in the performance of public activities, but to impose liability on those who are wrongfully withholding its assets.

If the act is to apply, however, it must appear that the property sought was concealed, with the intent to hinder creditors. The word "conceal" is one of plain interpretation, defined as a hiding or withdrawing of something from observation, and implies some affirmative action more than a mere failure to disclose: 12 C. J. 373. Concealment means the act of "hiding or keeping secret, the improper suppression or disguise of a fact, circumstance or qualification, which rests within the knowledge of one only of the parties to the contract, but which ought in fairness and good faith to be communicated to the other, whereby the party so concealing draws the other into an engagement which he would not make but for his ignorance of the fact concealed......The term implies design and purpose. A mere silence is not of itself a concealment": 12 C. J. 375; Shoesmith's Case, 135 Fed.

684; United States v. Violin, 188 Fed. 542. "To constitute [such] within the meaning of the attachment statutes, it is necessary that there should be a physical hiding or secreting of property": 6 C. J. 68. The Act of 1828 does not apply unless there is not only a secreting of property of the corporation, but it also further appears the same was knowingly received, with intent to hinder creditors. As in the case of alleged fraudulent conveyances, the question of the honesty of the grantee's conduct must be considered: Littieri v. Freda, 241 Pa. 21.

The necessary jurisdictional facts were averred in the petition forming the foundation of this proceeding, but proof of them was utterly lacking. The learned court below instructed the jury that the acceptance of a part of the purchase price by the defendants was in perfect good faith, but declared the mere receipt of a share of the assets before a formal dissolution constituted a constructive concealment with intent to hinder creditors, and, therefore, was within the statute. It held that had there been a formal winding up of the corporation and payment then made, no seizure in execution would have been possible, but, since this did not appear, the funds could be reached in the manner proposed. The fact was found that "there is absolutely no evidence in this case of any fraudulent concealing of property or assets of the Mount Union Water Company by these defendants for the purpose of avoiding the payment of its debts," but, notwithstanding the bona fides of the transaction, the court held the creditor might still invoke the provisions of the Act of 1828. We are unable to agree with this proposition. To do so would be to extend the statute beyond its expressed meaning, which is not permissible. The facts do not bring the proceeding within the terms of the legislation forming its basis, and it must therefore fail, and the judgment entered against both defendants be reversed. This conclusion renders unnecessary consideration of the effect of the statutes of lim-

itation (March 27, 1813, 1 Sm. L. 76, as amended and extended in corporate actions, March 28, 1867, P. L. 48), and further reference to this defense asserted below is unnecessary.

The judgments in both cases, argued together, are reversed, and here entered for the defendants.